UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

KIERELLE MONTRELL BURNS,

                     Petitioner,

v.

SHANE JACKSON,

                     Respondent.

_____/

Case No. 1:20-cv-1003

Honorable Paul L. Maloney

## **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Discussion

### I.      Factual allegations

Petitioner Kierelle Montrell Burns is incarcerated with the Michigan Department of Corrections at the Earnest C. Brooks Correctional Facility, (LRF) in Muskegon Heights, Muskegon County, Michigan.   On November 7, 2017, following a five-day jury trial in the Muskegon County Circuit Court, Petitioner was convicted of first-degree murder, in violation of Mich. Comp. Laws § 750.316, and use of a firearm during the commission of a felony (felony-firearm), in violation of Mich. Comp. Laws § 750.227b.   On December 13, 2017, the court sentenced Petitioner to life imprisonment without the chance of parole for murder, to be served consecutively to a 2-year sentence for felony-firearm.

The Michigan Court of Appeals described the facts underlying Petitioner's convictions as follows:

> Defendant's convictions arise from the shooting death of Darnell Byrd in the early morning hours of September 5, 2015.  Testimony and evidence established that defendant, Byrd, and Byrd's close friend, Josiah Fousse, worked for Jeremey Morton, who ran a criminal enterprise that distributed illegal narcotics in Muskegon, Michigan.  There was testimony that Morton, Fousse, and Byrd had been involved in a homicide just days earlier and that Byrd had been arrested. Morton feared that Byrd was talking to police officers and arranged for Byrd to be bailed out of jail.  Morton then fabricated a plan to commit a robbery.  In actuality, he asked Fousse and defendant to kill Byrd.  Evidence showed that Morton and his girlfriend dropped off defendant, Fousse, and Byrd by an alley that was near the place where they had told Byrd they would commit the robbery.  Defendant and Fousse shot Byrd approximately 14 times as the three men walked down the alley. Defendant and Fousse then met up with Morton and fled to Grand Rapids where they were later apprehended.

(Mich. Ct. App. Op., ECF No. 1-1, PageID.19.)

Petitioner was arrested on a material witness warrant on September 17, 2015.

(Pet'r's Appeal Br., ECF No. 1-2, PageID.37.)  He was interviewed thereafter a few times.  During

2

the third interview, Petitioner admitted his involvement in the crime.  (*Id*.)  Petitioner was arraigned and scheduled for a preliminary examination, which he waived.  After being bound over to circuit court, Petitioner testified at Morton's preliminary examination.  The prosecutor and Petitioner's counsel told Petitioner that he would get a plea agreement for his testimony against Morton.

The parties reached an agreement regarding Petitioner's plea: Petitioner was to plead guilty to second-degree murder; Petitioner would also plead guilty to felony-firearm and to being a second habitual offender; Petitioner would testify against any co-defendants in the Byrd murder case and against defendants on a separate homicide case; and sentencing would be at the discretion of the trial judge who would be informed regarding the extent of Petitioner's cooperation.

Petitioner had a change of heart.  He wrote the trial court letters indicating that he was no longer willing to testify against other defendants and he claimed he was induced to enter the plea agreement by lies from counsel.  Moreover, he claimed he was told to lie about Morton's involvement.  At a status conference, Petitioner informed the court that he wanted to withdraw his plea, but he wanted to condition that withdrawal on the exclusion of his prior statements during the third interview and during Morton's preliminary examination.  The trial court informed Petitioner that his earlier statements would not simply go away.  Consultation with counsel during the conference also revealed some confusion on Petitioner's part regarding the availability of duress as a defense to the murder charge.  After counsel explained the defense was not available to a charge of murder, Petitioner changed his mind again and indicated that he did not want to withdraw his plea.  By that point, however, the prosecutor indicated that he was no longer interested in the plea deal because Petitioner indicated that he would not testify against other

defendants as required by the plea agreement.  The trial court invited Petitioner to file a written motion to withdraw the plea if that was what he wanted to do.

Petitioner filed a written motion to withdraw his plea claiming that he had been coerced into saying things that suggested the existence of a conspiracy to commit first-degree murder, things that were not true.  The prosecutor did not oppose the motion and the court permitted Petitioner to withdraw his plea.

Petitioner unsuccessfully attempted to suppress the prior statements.  They were introduced at his trial.  Petitioner did not testify.  The jury found Petitioner guilty of first-degree murder.

Petitioner, with the assistance of counsel, directly appealed his convictions, raising the same three issues he raises in his habeas petition.  By opinion issued June 18, 2019, the Michigan Court of Appeals rejected Petitioner's challenges and affirmed the trial court.  Petitioner then filed an application for leave to appeal to the Michigan Supreme Court raising the same issues he had raised in the court of appeals.  The supreme court denied leave by order entered November 26, 2019.

On October 14, 2020, Petitioner timely filed his habeas corpus petition raising three grounds for relief, as follows:

I.      [Petitioner] is entitled to reversal of his convictions where the trial court erred in instructing the jury on the murder charges and where it erred in not instructing the jury on the lesser offense of manslaughter.

II.     [Petitioner] is entitled to reversal of his convictions where the trial court erred in admitting his prior statements into evidence thereby depriving him of his right to a fair trial as guaranteed by the 14th Amendment to the United States Constitution.

4

III.     [Petitioner] is entitled to reversal of his conviction and re-instatement of his original plea where trial counsel was ineffective for advising him that duress or undue pressure was a proper defense to a charge of murder and where counsel advised him that his prior statements would not be admissible at trial.

(Pet. Exh. B, ECF No. 1-2, PageID.28.)

## II.     AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."   28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Lopez v. Smith*, 574 U.S. 1, 4 (2014); *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013); *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012); *Williams*, 529

U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011)

(en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## III.    Discussion

### A.    Jury instructions

Petitioner contends that he was denied due process when the trial court failed to read the "justification or excuse" elements of the first-degree and second-degree murder instructions.  Additionally, Petitioner contends he was denied due process when the court denied defense counsel's request to read the instructions regarding the lesser included offense of manslaughter.

According to the Michigan Court of Appeals, the trial court read Michigan Model Criminal Jury Instruction 16.4, regarding first-degree murder, and Michigan Model Criminal Jury Instruction 16.5, regarding second degree murder.  (Mich. Ct. App. Op., ECF No.1-1, PageID.19.) Those instructions read as follows:

**M Crim JI 16.1 First-degree Premeditated Murder**

(1)    The defendant is charged with the crime of first-degree premeditated murder.  To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:

(2)    First, that the defendant caused the death of [name deceased], that is, that [name deceased] died as a result of [state alleged act causing death].

(3)    Second, that the defendant intended to kill [name deceased].

(4)    Third, that this intent to kill was premeditated, that is, thought out beforehand.

7

(5)     Fourth, that the killing was deliberate, which means that the defendant considered the pros and cons of the killing and thought about and chose [his / her] actions before [he / she] did it. There must have been real and substantial reflection for long enough to give a reasonable person a chance to think twice about the intent to kill. The law does not say how much time is needed. It is for you to decide if enough time passed under the circumstances of this case. The killing cannot be the result of a sudden impulse without thought or reflection.

[(6)     Fifth, that the killing was not justified, excused, or done under circumstances that reduce it to a lesser crime.]

**M Crim JI 16.5 Second-degree Murder**

(1)     [The defendant is charged with the crime of / You may also consider the lesser charge of] second-degree murder.

To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:

(2)     First, that the defendant caused the death of [name deceased], that is, that [name deceased] died as a result of [state alleged act causing death].

(3)     Second, that the defendant had one of these three states of mind: [he / she] intended to kill, or [he / she] intended to do great bodily harm to [name deceased], or [he / she] knowingly created a very high risk of death or great bodily harm knowing that death or such harm would be the likely result of [his / her] actions.

[(4)     Third, that the killing was not justified, excused, or done under circumstances that reduce it to a lesser crime.]

Mich. Model Crim. Jury Instructions, 16.1, 16.5.  The trial court did not read paragraph 6 of

instruction 16.1 or paragraph 4 of instruction 16.5 regarding justification, excuse, or circumstances

that reduce conduct to a lesser crime.  The court of appeals explained why:

> [A]s noted in each version of the criminal instructions that he cites, that portion of the instruction may be omitted if the defendant has not presented evidence to support a defense that amounts to justification or excuse, or has not presented evidence that would warrant an instruction on an appropriate necessarily included lesser offense. See, e.g., M Crim JI 16.1, n 4; M Crim JI 16.5, n 4. In this case, defendant presented no evidence to support any defense that would justify or excuse the killing. He also failed to present any evidence that the killing might have been mitigated to manslaughter. As such, the trial court properly omitted the last sentences from each instruction. See, e.g., *Henderson*, 306 Mich App at 8.

8

(Mich. Ct. App. Op., ECF No. 1-1, PageID.20-21.)

Petitioner suggested that his crime might have been justified or excused by duress

because Morton and/or Fousse threatened to kill him if he did not shoot Byrd.  The Michigan Court

of Appeals disagreed:

> [D]efendant maintains that the evidence showed that he only participated in the
> planned murder out of fear for his life.  Michigan recognizes the defense of duress
> under which a person may be excused for committing a crime when acting out of
> fear of death or great bodily harm.  *People v Lemons*, 454 Mich 234, 246-247; 562
> NW2d 447 (1997).  However, duress can never excuse murder.  *People v Gimotty*,
> 216 Mich App 254, 257; 549 NW2d 39 (1996).  Michigan law does not permit a
> person to submit to coercion and take the life of a third person; instead, the person
> being coerced should risk or sacrifice his or her own life rather than commit the
> murder.  *People v Henderson*, 306 Mich App 1, 5; 854 NW2d 234 (2014).
> Therefore, the trial court did not err when it precluded defendant from presenting a
> duress defense.

(Mich. Ct. App. Op., ECF No. 1-1, PageID.20.)

Alternatively, Petitioner argued that the duress might have the effect of reducing

his crime from murder to manslaughter.  The court of appeals acknowledged that manslaughter

was a lesser included offense of murder; however, the court offered reasons why Petitioner's

conduct did not fall within the manslaughter category and why duress did not move Petitioner's

conduct outside the category of murder.  The court explained:

> Voluntary and involuntary manslaughter are necessarily included lesser offenses of
> murder.  *Id*. at 541.  As such, defendant would have been entitled to an instruction
> on manslaughter, if a rational view of the evidence supported the instruction.  There
> was, however, no evidence that defendant accidentally shot and killed Byrd.
> Accordingly, he was not entitled to an instruction on involuntary manslaughter.  *Id*.
> at 536.  Similarly, there was no evidence that he voluntarily killed Byrd, but did so
> while in "the heat of passion," which was caused by "adequate provocation" and
> that there was no lapse of time within which a reasonable person would have
> controlled his passions.  *People v Roper*, 286 Mich App 77, 87; 777 NW2d 483
> (2009).  The provocation necessary to mitigate a homicide from murder to
> voluntary manslaughter is that which would cause a reasonable person to lose
> control and act out of passion rather than reason.  *Id*.  The evidence in this case

9

showed that Morton formulated a plan to lure Byrd into a particular location so that defendant and Fousse could kill him.  Defendant knew about the plan, accompanied the others to the location, and then shot and killed Byrd as intended.  Nevertheless, defendant maintains that the evidence showed that he only participated in the planned murder out of fear for his life.

\*          \*          \*

[D]uress cannot negate the intent, malice, or premeditation elements of murder. *People v Reichard*, 323 Mich App 613, 615-616; 919 NW2d 417 (2018).  Because voluntary manslaughter involves provocation that mitigates the malice element of murder, see *Mendoza*, 468 Mich at 540, and duress cannot mitigate the malice element of murder, see *Reichard*, 323 Mich App at 616, defendant could not rely on evidence that he feared for his life to support a manslaughter instruction.  The trial court did not err when it refused to instruct the jury on manslaughter.  See *Mendoza*, 468 Mich at 533.

(Mich. Ct. App. Op., ECF No. 1-1, PageID.20.)

Not every claimed instructional error rises to the level of a constitutional violation. "Before a federal court may overturn a conviction resulting from a state trial in which [the challenged] instruction was used, it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment."  *Cupp v. Naughten*, 414 U.S. 141, 146 (1973).  The Supreme Court has defined the subcategory of instructional errors that warrant habeas relief very narrowly.  *Estelle v. McGuire*, 502 U.S. 62, 73 (1991) (citing *Dowling v. United States*, 493 U.S. 342, 352 (1990) ("Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation.").

The Due Process Clause requires that every element of the charged crime be proven beyond a reasonable doubt.  *In re Winship*, 397 U.S. 358, 364 (1970).  When a jury is not properly instructed with regard to the elements of the charged crime, the due process right to proof beyond a reasonable doubt is implicated.  *Sandstrom v. Montana*, 442 U.S. 510 (1979).  It is the prerogative

of the state, however, to define the elements of the crime and the federal courts are bound by their

determination.  *See Johnson v. United States*, 559 U.S. 133, 138 (2010) ("We are, however, bound

by the Florida Supreme Court's interpretation of state law, including its determination of the

elements . . . ."); *Jackson v. Virginia*, 443 U.S. 307, 324 n.16 (1979) ("The respondents have

suggested that this constitutional standard will invite intrusions upon the power of the States to

define criminal offenses.  Quite to the contrary, the standard must be applied with explicit reference

to the substantive elements of the criminal offense as defined by state law. ").   It is also the

prerogative of the state to determine what charge or charges to bring:

> In our system, so long as the prosecutor has probable cause to believe that the
> accused committed an offense defined by statute, the decision whether or not to
> prosecute, and what charge to file or bring before a grand jury, generally rests
> entirely in his discretion.  Within the limits set by the legislature's constitutionally
> valid definition of chargeable offenses, "the conscious exercise of some selectivity
> in enforcement is not in itself a federal constitutional violation" so long as "the
> selection was [not] deliberately based upon an unjustifiable standard such as race,
> religion, or other arbitrary classification."  *Oyler v. Boles*, 368 U.S. 448, 456, 82
> S.Ct. 501, 506, 7 L.Ed.2d 446.

*Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (footnote omitted). The prosecutor in

Petitioner's case did not charge him with manslaughter, voluntary or otherwise.

Similarly, the Due Process Clause guarantees criminal defendants a meaningful

opportunity to present a complete defense.  *California v. Trombetta*, 467 U.S. 479, 485 (1984).

Nonetheless, it is also the prerogative of the state to define whether or not a defense applies to a

particular crime.  *See Foucha v. Louisiana*, 504 U.S. 71, 96 (1992) (acknowledging "the general

rule that the definition of both crimes and defenses is a matter of state law . . . ."); *Gimotty v. Elo*,

40 F. App'x 29, 32 (6th Cir. 2002) ("States are free to define the elements of, and defenses to,

crimes. . . . In determining whether a petitioner was entitled to a defense under state law, federal courts must defer to state-court interpretations of the state's laws . . . .")

Finally, the Due Process Clause requires providing lesser included offense instructions in <u>capital</u> cases.  *Beck v. Alabama*, 447 U.S. 625 (1980).  Lesser included offense instructions were also required in <u>noncapital</u> cases under the English common law and they are still required under the common law or by statute in every state and in the federal courts, if and when the evidence supports it.  *Id.* at 633-634, 636 n. 11, 12.

Even though the courts of this nation are in complete accord as to the propriety of lesser included offense instructions, the Supreme Court has never held that lesser included offense instructions are required as a matter of constitutional due process in noncapital cases.  *Id.* at 638 n. 14; *see also Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990) (en banc) ("[The failure to instruct on lesser included offenses in noncapital cases [is not] such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure[.]").

Moreover, whether or not a particular crime is a lesser included offense of a charged crime is also a matter of state law.  *Richie v. Workman*, 599 F.3d 1131, 1136 (10th Cir. 2010) ("Whether an offense is a lesser-included offense is a matter of state law."); *see also Hopkins v. Reeves*, 524 U.S. 88, 95-99 (1998) (Court looked to state law to determine whether offenses were lesser included offenses of charged crime and noted the various tests states employed to determine whether one offense was a lesser included offense of another).  Similarly, the state court's determination that the evidence did not warrant giving the instruction would be entitled to considerable deference.  *Bagby*, 894 F.2d at 795.  Indeed, the highest state court's determination on the issue would be "axiomatically correct[.]"  *Id.*  Failure to give a lesser included offense

instruction "does not rise to the level of constitutional error when the failure was correct as a matter of state law."  *Id.*

The Michigan Court of Appeals concluded that duress is not a defense to murder. It is the State of Michigan's prerogative to define crimes and defenses.  It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions.  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 68.  The decision of the state courts on a state-law issue is binding on a federal court.  *See Johnson*, 559 U.S. at 138; *Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'"  *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76).  *See also Thomas v. Stephenson*, 898 F.3d 693, 700 n.1 (6th Cir. 2018) (same).  Accordingly, the Michigan Court of Appeals' determination that duress is not a defense to murder binds this Court and ends the inquiry.

The state court's determination that duress is not a defense to murder also forecloses his constitutional argument with regard to including the justification or excuse language in the murder instructions.  Because Michigan requires a person being coerced to risk or sacrifice his or her own life rather than commit the murder, duress does not justify or excuse the crime of murder. Duress was the only justification or excuse offered by Petitioner; it was the only justification or excuse for which he offered evidence in support; and it is the only justification or excuse argued by Petitioner now.  Therefore, Petitioner presented no evidence that would justify or excuse the crime with which he was charged.

If "the testimony given or proffered meet[s] a minimum standard a to each element of the defense . . . of duress, assuming the defense is available as a matter of law, a trial judge may

not take the question of duress away from the jury." *United States v. Bailey*, 444 U.S. 394, 415 (1980).  On the other hand, "if the defendant's proffered evidence is legally insufficient to support a duress defense, the trial judge should not allow its presentation to the jury." *United States v. Johnson*, 416 F.3d 464, 468 (6th Cir. 2005).  Certainly, therefore, if the defense is not available as a matter of law or the evidence is insufficient to establish the defense, it is not a constitutional violation for the trial court to refuse to instruct regarding the defense.[1]  Because the duress defense is unavailable here and because Petitioner has failed to provide evidence of any other justification or excuse, Petitioner has not demonstrated that the trial court's deletion of the "justification or excuse" paragraph from the murder instructions is contrary to, or an unreasonable application of, clearly established federal law.

Similarly, Petitioner has not demonstrated that the trial court's refusal to read the manslaughter instructions is contrary to, or an unreasonable application of, clearly established federal law.  Petitioner cannot make that showing because the Supreme Court has only spoken on the issue in capital cases and this is not a capital case.  But, even if this were a capital case, the state court of appeals concluded that there was no evidence to support a jury determination that Petitioner's shooting of Byrd was "accidental"—which precluded a conviction for involuntary manslaughter—and there was no evidence that Petitioner's shooting of Byrd was "provoked"— which precluded a conviction for voluntary manslaughter.  Because there was no evidence to

---

[1] That does not mean an instruction is **constitutionally** required where the defense is available as a matter of law and there is evidence offered that is sufficient to support the defense.  *Bailey* and *Johnson* were both federal prosecutions. In the federal courts, [a]s a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor.  *Matthews v. United States*, 485 U.S. 58, 63 (1988).  But, *Matthews* does not expressly rest on a constitutional foundation and the Supreme Court's subsequent decision in *Gilmore v. Taylor*, 508 U.S. 333 (1993) suggests that the due process right to present a complete defense concerns the presentation of defense evidence, and does not extend to "restrictions imposed on a defendant's ability to present an affirmative defense." *Gilmore*, 508 U.S. at 343 (holding that even where jury instructions "created a risk that the jury would fail to consider evidence that related to an affirmative defense," the state defendant's claim of instructional error would create a new rule that could not be the basis for federal habeas relief.).

support conviction of those crimes, it could not be constitutional error, even in a capital case, for

the trial court to *not* give the lesser included offense instructions.  *Bagby*, 894 F.2d at 796 ("In

*Hopper [v. Evans]*, 456 U.S. 605 [(1982), [the court held] that a capital defendant is entitled to a

lesser included offense instruction only when there is evidence to support it . . . .").

   For all of these reasons, Petitioner is not entitled to habeas relief on his jury

instruction claims.

## IV. Due process right to exclude Petitioner's prior statements

   Plaintiff claims that the admission of his prior statements violated the Michigan

Rules of Evidence and, therefore, deprived him of a fair trial in violation of the due process

guarantee in the Fourteenth Amendment.  The extraordinary remedy of habeas corpus lies only for

a violation of the Constitution.  28 U.S.C. § 2254(a).  As the Supreme Court explained in *Estelle*,

502 U.S. at 62, an inquiry whether evidence was properly admitted or improperly excluded under

state law "is no part of the federal court's habeas review of a state conviction [for] it is not the

province of a federal habeas court to re-examine state-court determinations on state-law

questions." *Id.* at 67-68.  Rather, "[i]n conducting habeas review, a federal court is limited to

deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.*

at 68.  State-court evidentiary rulings cannot rise to the level of due process violations unless they

offend some principle of justice so rooted in the traditions and conscience of our people as to be

ranked as fundamental.  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted);

*accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496,

512 (6th Cir. 2003).  This approach accords the state courts wide latitude in ruling on evidentiary

matters.  *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

   Further, under the AEDPA, the court may not grant relief if it would have decided

the evidentiary question differently.  The court may only grant relief if Petitioner is able to show

that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme

Court on a question of law or if the state court decided the evidentiary issue differently than the

Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d

846, 860 (6th Cir. 2000). Petitioner has not met this difficult standard. Indeed, he does not cite

any Supreme Court authority in support of his argument regarding the admission of his prior

statements.

Petitioner posits that the state court erred in applying two evidentiary rules:

Michigan Rule of Evidence 410 and Michigan Rule of Evidence 804. The Michigan Court of

Appeals, however, concluded the trial court properly admitted the investigative subpoena

testimony under Rule 804:

> Defendant maintains that his statement pursuant to the investigative subpoena was
> inadmissible under MRE 804(b)(1) and the decision in *People v Farquharson*, 274
> Mich App 268; 731 NW2d 797 (2007). MRE 804 provides several exceptions to
> the general rule that hearsay statements are inadmissible at trial, and MRE
> 804(b)(1) specifically creates an exception for former testimony that meets certain
> criteria. In *Farquharson*, this Court had to determine whether the exception to the
> prohibition on the admission of hearsay applied to a deceased witness' testimony
> pursuant to an investigative subpoena. *Farquharson*, 274 Mich App at 272-279.
> MRE 804 and the decision in *Farquharson* are, however, inapplicable to this case
> because defendant's statements are by definition not hearsay. See MRE 801(d)(2).
> For that reason, the prosecution did not have to establish an exception to the
> prohibition on the admission of hearsay statements stated under MRE 802.
> Consequently, the trial court did not err when it allowed the admission of these
> statements.

(Mich. Ct. App. Op., ECF No. 1-1, PageID.21.) The court of appeals' determination that

Petitioner's investigative subpoena testimony was admissible under the Michigan Rules of

Evidence binds this Court. Therefore, the testimony which Petitioner claims should have been

excluded as hearsay is simply not hearsay.

Even if the testimony were considered hearsay, Petitioner would not be entitled to

habeas relief. Although in some circumstances, the Confrontation Clause may be implicated by

the admission of hearsay testimony, *see Bugh*, 329 F.3d at 506 (discussing *Maryland v. Craig*, 497 U.S. 836, 846 (1990); *Idaho v. Wright*, 497 U.S. 805, 817-23 (1990); *United States v. Owens*, 484 U.S. 554 (1988); *Ohio v. Roberts*, 448 U.S. 56, 65 (1980)), the use of Petitioner's own past statements cannot deprive Petitioner the opportunity to confront the witnesses against him. Moreover, as the Sixth Circuit has held, the Supreme Court has never recognized that the constitution is violated by the admission of unreliable hearsay evidence. *Desai v. Booker*, 732 F.3d 628, 630-31 (6th Cir. 2013). Instead, the Supreme Court has merely "h[e]ld out the possibility that 'the introduction' of 'evidence' in general could be 'so extremely unfair that its admission violates fundamental conceptions of justice.'" *Id.* at 631 (quoting *Dowling*, 493 U.S. at 352). Such a standard is highly general. "'The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations,'—and, it follows, the less likely a state court's application of the rule will be unreasonable." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). Here, as in *Desai*, the state court held that the admission of Petitioner's investigative subpoena testimony "fell within an established hearsay exception," in this case for admissions by a party-opponent under Michigan Rule of Evidence 801(d)(2). *Id.* "Where, as here, a state court reasonably rejects a rule urged by the claimant but yet to be adopted by the Supreme Court, it does not unreasonably apply established federal law." *Id.* at 632 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009).

The Michigan Court of Appeals also concluded that Petitioner's testimony at Morton's preliminary examination was admissible. The issue with regard to that testimony, however, was not hearsay. Instead, Petitioner objected to the admission of that testimony because it was protected by the privilege afforded to plea negotiations under Michigan Rule of Evidence

410.  The court of appeals determined that the privilege did not protect Petitioner's preliminary

examination testimony:

> Defendant also maintains that his preliminary examination testimony was
> inadmissible under MRE 410, which provides, in relevant part:
>
>> Except as otherwise provided in this rule, evidence of the following is not,
>> in any civil or criminal proceeding, admissible against the defendant who
>> made the plea or was a participant in the plea discussions:
>>
>>> (1) A plea of guilty which was later withdrawn;
>>>
>>> (2) A plea of nolo contendere, except that, to the extent that evidence
>>> of a guilty plea would be admissible, evidence of a plea of nolo
>>> contendere to a criminal charge may be admitted in a civil
>>> proceeding to support a defense against a claim asserted by the
>>> person who entered the plea;
>>>
>>> (3) Any statement made in the course of any proceedings under
>>> MCR 6.302 or comparable state or federal procedure regarding
>>> either of the foregoing pleas; or
>>>
>>> (4) Any statement made in the course of plea discussions with an
>>> attorney for the prosecuting authority which do not result in a plea
>>> of guilty or which result in a plea of guilty later withdrawn.
>
> In this case, the prosecution did not seek the admission of evidence that defendant
> entered a plea of guilty or nolo contendere or the admission of any statement that
> he made at a proceeding held under MCR 6.302.  Therefore, MRE 410(1) through
> (3) did not apply.  The only question is whether the statements made to police
> officers[2] and the preliminary examination testimony constituted statements that
> were "made in the course of plea discussions with an attorney for the prosecuting
> authority" that resulted in a plea that was later withdrawn.  MRE 410(4).
>
> *        *        *
>
> The trial court also correctly determined that MRE 410(4) did not apply to
> defendant's testimony at Morton's preliminary examination. The assistant
> prosecuting attorney testified at the suppression hearing that, by the time of
> Morton's preliminary examination, the prosecution had discussed a plea deal with

---

[2] Although Petitioner raised the objection with regard to the statements he made to police, as well as the preliminary examination testimony, only the preliminary examination testimony was inculpatory.  The Michigan Court of Appeals concluded the statements to police also fell outside the protection of Rule 410.  Petitioner's focus in his petition, however, is only on the preliminary examination testimony.  Accordingly, the court of appeals' resolution of the "statements to police" issue is not included in the block quote or discussed further herein.

defendant and agreed to let him plea to second-degree murder in exchange for his cooperation in the prosecution of Morton.  And defendant testified at the hearing that he only testified at Morton's preliminary examination after he had agreed to a plea deal with the prosecution.  As the trial court correctly stated in its order denying defendant's motion to suppress, defendant's testimony at the preliminary examination was not testimony made in the "course of plea negotiations," MRE 410(4); rather, it was testimony provided pursuant to a plea agreement.  A defendant does not have a reasonable expectation to negotiate a plea while testifying under oath at a preliminary examination.  See *Dunn*, 446 Mich at 415.  Because defendant's testimony at the preliminary examination was not made as part of the plea discussions, MRE 410(4) did not preclude admission of his testimony at trial.  Accordingly, the trial court did not abuse its discretion when it denied defendant's motion to suppress his statements and testimony.  See *Yost*, 278 Mich App at 353.

(Mich. Ct. App. Op., ECF No. 1-1, PageID.21-22.)  The Michigan Court of Appeals' determination that the preliminary examination testimony is not plea negotiations protected by Rule 410 is a state law decision that is binding on this Court.  Moreover, the court's determinations of the underlying facts appear to be eminently reasonable on the record as Petitioner describes it and Petitioner does not contend otherwise.[3]

But, even if the state court got it wrong somehow, Petitioner is not entitled to habeas relief because he cannot show that the improper admission of evidence privileged under Rule 410 is contrary to, or an unreasonable application of, clearly established federal law.  The Supreme Court has spoken only once regarding the parallel Federal Rule of Evidence 410.  *United States v. Mezzanatto*, 513 U.S. 196 (1995).  The crux of that decision was that the privilege afforded by Rule 410 was waivable.  The Supreme Court has never held that the admission of evidence of plea negotiations violates due process.  *See, e.g., Whitaker v. Stephens*, No. H-11-CV-2467, 2015 WL 1282182, at *7 (S.D. Tex. Mar. 17, 2015) ("The TCCA found that the State's alleged solicitation and use of the proffer at trial did not violate due process rights.  The Court may not countermand

---

[3] Indeed, Petitioner does not challenge or respond to the court of appeals' decision in any way.  He simply repeats the arguments he raised to that court.

this decision unless it 'was contrary to, or involved an unreasonable application of, *clearly established federal law*, as determined by the Supreme Court of the United States.' . . . *United States v. Mezzanatto* resolves that the protections of Federal Rule of Evidence 410 are waivable. but shed no light on the constitutional implications of prosecutorial use of evidence covered by the rule in the absence of waiver. . . . Mr. Whitaker has not identified 'clearly established federal law' with which the TCCA's decision conflicts.").  Accordingly, Petitioner is not entitled to habeas relief on this claim.

## V.     Ineffective assistance of counsel

Plaintiff claims that counsel rendered ineffective assistance when she advised Petitioner that duress was a proper defense to a charge of murder and that his prior statements would not be admissible at trial.  Plaintiff contends it was that poor advice that prompted his plea withdrawal.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:   (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687.   A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or

omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel.  *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).  Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness.  *Id.*  In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process.  "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Id*. at 59.  Or, in Petitioner's case, Petitioner must show that, but for counsel's errors, he would not have withdrawn his plea.  *See, e.g., Lafler v. Cooper*, 566 U.S. 156 (2012); *Burt v. Titlow*, 571 U.S. 12 (2013).

The Michigan Court of Appeals applied the following standard to resolve Petitioner's claim:

> "To establish a claim of ineffective assistance of counsel, the defendant must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Gioglio*, 296 Mich App at 22 (quotation marks and citation omitted).

(Mich. Ct. App. Op., ECF No. 1-1, PageID.23.)  Although the court of appeals cites state authority in support of that standard, the state authority it cites—*Gioglio*—derives the standard from *Strickland*.  *People v. Gioglio*, 815 N.W.2d 589, 596 (Mich. Ct. App. 2012).  Thus, it cannot be said that the state court applied the wrong standard.

When a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles*, 556 U.S. at 123); *see also Burt*, 571 U.S. at 13; *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

The state appellate court carefully reviewed the record to determine whether there was support for Petitioner's claims and concluded there was not:

> Defendant entered into a written plea agreement with the prosecution in which he agreed to testify truthfully against Morton and any other codefendants or involved parties concerning the death of Byrd and the shooting that occurred at the projects. In exchange, the prosecution agreed to accept a plea to second-degree murder. Defendant agreed at his plea hearing that he had not been threatened or promised anything else in exchange for his plea. The trial court also informed defendant at the plea hearing about the nature of the open murder charge. Specifically, it advised him that a jury could find him guilty of first-degree murder, second-degree murder, or manslaughter. Defendant stated that he understood. He further agreed that the trial court would, on the basis of his plea, be sentencing him for second-degree murder.

> Defendant later sent the trial court correspondence wherein he stated that he was no longer willing to testify, which voided his plea deal. Defendant later wrote a lengthy letter to the trial court in which he stated that his trial counsel lied to him about the law to get him to take the plea deal. He claimed that he was told that a charge of open murder always resulted in life in prison even though that was not true. He claimed that he was also told to lie about Morton's involvement. He maintained that defense counsel had not provided him with advice about the law and reported that he had gained his knowledge from a cellmate. He further asked the trial court to suppress his previous statements.

> The trial court discussed defendant's decision to withdraw from his plea agreement at a status conference. Defense counsel informed the trial court that defendant believed that he was coerced into making certain statements at the plea hearing and felt that he could not truthfully testify to those matters at Morton's trial. For that reason, he wanted to withdraw his plea but only on condition that his earlier

statements would not be used against him.  Defendant agreed that that was his position.  The trial court warned defendant that it could not just make his earlier statements go away.  At that point, defendant's mother interjected, and the trial court gave defense counsel an opportunity to consult with defendant and his mother. After consulting with defendant, defense counsel informed the court that she had spoken to defendant and his mother about "one thing that we didn't talk about as far as duress being a defense to his intent when he went down that alley . . . ."  She explained that defendant was under the "understanding that duress was a defense." She stated that "[w]e have now cleared that up" and defendant no longer wanted to withdraw his plea.  Defendant agreed that, given the state of the law, he had to take responsibility.  The prosecutor responded that he was no longer interested in the plea deal given that defendant was stating that he would not testify against his codefendants.  The trial court determined that the defense should file a written motion to withdraw the plea if he wished to proceed.

Defense counsel filed a written motion to withdraw defendant's plea on June 23, 2017.  In that motion, counsel wrote that defendant believed he had been coerced into saying things that implicated a conspiracy to commit first-degree murder.  She further wrote that he would not be able to testify to those matters at Morton's trial because the statements were not the truth.  At a hearing held later that month, the prosecutor did not object, and the trial court indicated that it would grant the motion.  The trial court entered an order granting the motion in July 2017.

There was no indication in defendant's correspondence with the trial court that he was induced into withdrawing his plea as a result of advice from his lawyer that his statements could not be used against him in the event that he withdrew his plea, or that he could raise a duress defense at trial.  Indeed, defendant suggested in his letters that he was acting on his own and without the advice of counsel.  The fact that he specifically asked to have his previous statements suppressed also belied his position.  Subsequent events strongly suggested that defendant himself knew that his statements might be used against him and that it was not defense counsel who misled him into thinking that duress was a defense to the charge of murder. Notably, the statements from the hearing held in June 2017, show that defense counsel was aware that duress was not a defense to murder and that she corrected defendant's misunderstanding once she became aware of it.

Accordingly, on this record, defendant has not established the factual predicate for his claim—he has not shown that defense counsel improperly advised him about the admissibility of his statements or improperly told him that duress was a defense before his decision to contact the trial court and try and withdraw from his plea agreement.  *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) (stating that the defendant bears the burden to establish the factual predicate of his claim that he did not receive effective assistance).  Because defendant has not shown that defense counsel provided advice that fell below an objective standard of reasonableness under prevailing professional norms, his claim of ineffective assistance of counsel fails.  See *Gioglio*, 296 Mich App at 22.

The record also shows that defendant vacillated about whether to withdraw his deal after being told that his statements could not be made to go away and that duress was not a defense. Despite his vacillation, defense counsel filed a written motion to withdraw defendant's plea. It must be understood on this record that defense counsel filed the motion because defendant insisted on withdrawing his plea even after being properly advised about the ramifications at the hearing. The motion was carefully worded to establish grounds to withdraw, but notably the defense no longer conditioned the motion on the suppression of defendant's statements. Hence, the record showed that defense counsel filed the motion to withdraw on defendant's behalf after defendant repeatedly expressed his intent not to testify against Morton, and after he had been properly advised that his statements might be used against him and that duress was not a defense to murder. For that reason, even if this Court were to conclude that defense counsel improperly advised defendant about the admissibility of his statements and the availability of the duress defense—a supposition that is highly unlikely—defendant has not shown that, but for the improper advice, he would not have withdrawn his plea. The record showed that any misconceptions that he may have had about the state of the law had been cleared up before defense counsel filed the written motion to withdraw on his behalf. Moreover, defendant continued to assert that he could not comply with his plea agreement because to do so he would have to lie about the underlying events. Consequently, defendant cannot show that, but for defense counsel's allegedly improper advice, he would not have withdrawn from his plea agreement—that is, he cannot show that the outcome would have been different. See *id.*

(Mich. Ct. App. Op., ECF No. 1-1, PageID.23-25.)

The factual findings by the Michigan Court of Appeals preclude a determination that counsel was professionally unreasonable in providing advice to Petitioner. Moreover, even if counsel provided improper advice regarding the admissibility of Petitioner's prior statements or the availability of duress as a defense to murder, as alleged by Petitioner, the court of appeals' factual determinations preclude a finding that Petitioner suffered prejudice as a result. The appellate court's factual findings are presumed to be correct, and Petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis*, 658 F.3d at 531; *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656.

Petitioner merely repeats the factual contentions he made to the Michigan Court of Appeals:

> [H]is counsel was ineffective for indicating to Mr. Burns that the statements made
> pursuant to the investigative subpoena, material witness warrant and the testimony
> given during his co-defendant's preliminary examination would not be admissible
> against him during trial.  She was also ineffective for advising him that duress was
> a viable defense to a homicide charge under Michigan law.

(Pet'r's Appeal Br., ECF No. 1-2, PageID.66.)  There is nothing in the record to support those factual contentions.  Therefore, Petitioner has failed to rebut the presumption of correctness afforded the appellate court's factual determinations regarding the professional reasonableness of defense counsel's conduct.

Moreover, Petitioner offers nothing to rebut the presumption of correctness afforded to the appellate court's factual determinations regarding the events at the status conference where Petitioner was advised that duress was not a defense to murder and that his prior statements would not, necessarily, be excluded should he withdraw his plea.  Under those circumstances, Petitioner cannot show that he would have not withdrawn his plea if his counsel had only so advised him because the court so advised him and he chose to withdraw his plea anyway.

Petitioner has failed to demonstrate that the court of appeals' factual determinations are unreasonable on the record.  Petitioner has also failed to show that the court of appeals' determination that his defense counsel was not ineffective was contrary to, or an unreasonable application of, *Strickland*.  Accordingly, he is not entitled to habeas relief on this claim.

## VI.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).

Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong.  Therefore, the Court will deny Petitioner a certificate of appealability.  Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.


Dated:   November 13, 2020                          /s/ Paul L. Maloney
                                                    Paul L. Maloney
                                                    United States District Judge